(165 App. Div. 847)

### JAQUISH v. KELLY et al. (No. 329/88.)

(Supreme Court, Appellate Division, Third Department. January 6, 1915.)

1. NEW TRIAL (§ 99*)—GROUNDS—NEWLY DISCOVERED EVIDENCE—FALSITY OF TESTIMONY OF SUCCESSFUL PARTY.

An order granting a new trial for newly discovered evidence and the falsity of the evidence of the successful party *held* proper on the showing made.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 201, 207; Dec. Dig. § 99.*]

2. NEW TRIAL (§ 11*)—GROUNDS—MOTIONS.

Where substantial justice requires a new trial, a motion therefor cannot be denied merely because it is the third motion, where the first motion was withdrawn, and the second decided without having all the evidence produced on the hearing of the third motion.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 14–16; Dec. Dig. § 11.*]

Howard, J., dissenting.

Appeal from Special Term, Delaware County.

Action by George L. Jaquish against George W. Kelly and another. From an order granting a new trial after verdict for plaintiff, he appeals. Affirmed.

See, also, 150 N. Y. Supp. 1091.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

O'Connor & O'Connor, of Hobart (C. R. O'Connor, of Hobart, of counsel), for appellant.

A. G. Patterson, of Walton, for respondents.

LYON, J. This is an appeal from an order granting the motion for a new trial, made by the defendants upon the grounds of newly discovered evidence and of the falsity of certain testimony given by the plaintiff upon the trial.

[1] The action was brought to obtain a judgment for damages, and enjoining the defendants from wrongfully flooding the lands of the plaintiff, which flooding the plaintiff claimed had resulted from the act of the defendants in wrongfully raising the height of the dam crossing

the East branch of the Delaware river just below the plaintiff's farm at Halcottville, N. Y. The trial resulted, in May, 1912, in a judgment awarding the plaintiff $150 damages, and perpetually enjoining the defendants from impounding the waters of the river by means of their dam to such an extent that the water would be set back, by reason thereof, beyond one rod above the plaintiff's bridge, when the surface of the water at the dam was just even with the crest of the dam. A dam had been maintained upon the site in question for upwards of 100 years preceding the year 1907, at a height, as claimed by the plaintiff, which set the water back only one rod above the bridge, but at a height, as claimed by the defendants, which set the water back for more than 30 rods above the bridge, and within a few rods of the Roxbury town line.

The crucial questions involved in the litigation are as to the relative heights of the old and the new dam, which latter was constructed in 1907, and as to the defendants' right to maintain the dam, not only by prescription, but also by grant, as defendants plead in their answer. In January, 1913, the plaintiff having complained that the defendants had willfully violated the injunction, by maintaining their dam at a height which set the water back fully 30 rods above the bridge, thereby flooding a portion of the plaintiff's lands, which charge the defendants denied, the court appointed Hon. George F. Andrews, of Owego, N. Y., a referee to hear the proofs of the respective parties, and report the same, together with his opinion as to whether the defendants had violated the judgment by causing the water of the river to be set back more than one rod above plaintiff's bridge. A large amount of evidence was taken upon the reference, and the exhaustive report of Judge Andrews furnishes the first reliable proof in the litigation as to several material matters, and is the principal basis for the present motion for a new trial. Upon the presentation of the report, the court adjudged the defendants guilty of contempt of court, in causing the waters to be set back a distance of 500 feet above the bridge, and imposed as punishment the payment of a fine and costs aggregating about $850, and, in default of payment, imprisonment. From this order an appeal was taken to this court, which affirmed the order.

Among the witnesses testifying on the trial on behalf of the plaintiff was the plaintiff himself and one Hinckley, who testified that the height of the old dam, as measured by the plaintiff, from the bottom of the ties upon which the old dam was built, to the crest of the dam, was 6 feet, and that the height of the new dam was 2 feet 1 inch greater, or 8 feet 1 inch. The evidence in the contempt proceedings seems to have established with reasonable certainty that in fact such height of the new dam varied from 5 feet 10 inches to 6 feet 3 inches.

The plaintiff also testified upon the trial that the new dam so set the water back upon his premises that "it drove me out of my road, which I drove the better part of my life. It is 2 feet and 1 inch higher than the old dam"—referring to a private roadway which led from the plaintiff's buildings across the creek. However, in the contempt proceedings it was established by surveys that the lowest point in this road was in fact 18 inches higher than the crest of the dam. Plaintiff also produced evidence upon the trial to the effect that since the dam

was raised ice could be harvested in a large cove near the head of the pond. Several witnesses testified in the contempt proceedings that ice had in fact been harvested in the cove while the old dam was in existence, but that none could be harvested there since the construction of the new dam, owing to the want of water.

Witnesses called by the plaintiff upon the trial testified that with the old dam water backed to a point only 1 rod above the bridge, while many witnesses called by the defendant in the contempt proceedings testified that water was dammed back 30 rods above the bridge by the old dam. As also bearing upon the distance to which the water was set back by the old dam, there is the testimony of several witnesses given in the contempt proceedings as to the depth of water in the pond and stream at various points—for instance, as to the conceded practice of plaintiff of herding his sheep on the bridge, and removing planks and dropping the sheep through into the stream for the purpose of washing them; as to boats having been run to points 500 or 600 feet above the bridge; as to a side-wheel steamboat, drawing from 18 to 22 inches of water, having been operated on the pond as far up as the bridge for several years prior to 1907.

While to a considerable extent this evidence, given in the contempt proceedings bearing upon the relative heights of the two dams, is cumulative, it is important, in view of the fact that the evidence given upon the trial relating to this subject was meager and was regarded by the court as very indecisive, as indicated by the following statement in his opinion regarding it:

"The evidence is not conclusive nor very satisfactory upon that point."

As to the extent of the easement acquired by prescription, the court said:

"This has not been made very clear to me, but I am fairly well convinced that the water as restrained or impounded by the old dam, or dam prior to 1907, flooded plaintiff's premises only to a point about one rod above plaintiff's bridge."

Doubtless because of the unsatisfactory nature of the evidence as to the relative heights of the dams, the trial court made no finding upon that subject, but limited his decision to the finding that the former dam was of plank and stone construction, and allowed much water to pass through it, while the crest of the new dam was of concrete and retained the water, and that thereby the water was more securely impounded, and was set back farther up the stream. The court based his decision against the defendants upon the ground of their having exceeded their prescriptive rights.

As newly discovered evidence, the defendants have produced four photographs, taken July 4, August 21, and October 2 and 20, 1897, 10 years prior to the construction of the new dam, which photographs the defendants state in their brief, although no statement to that effect appears in the moving affidavits, were never in their possession nor under their control, and have been found since the former motion was made. Accompanying these photographs the defendants have submitted recently taken photographs showing corresponding situations. In both sets of photographs permanent erections along the

shore of the pond appear, which existed in both 1897 and 1907, from which it appears conclusively, as defendants argue, that the water was as high in the pond with the old dam as with the new. While the relative heights of the water at the spillway is not shown, the older photographs, taken at four different periods in the summer and fall of 1897, indicate that the old dam retained water in the pond at practically the height of the new dam.

The lands of the plaintiff and defendants are separated by the East branch of the Delaware river; the plaintiff's lands lying on the easterly, and the defendants' lands on the westerly, side thereof. The source of the defendants' title is a deed from Janet Montgomery to David Kelly, dated February 1, 1805, recorded in Delaware county clerk's office on April 1, 1909, conveying the lands now owned and occupied by the defendants. Contained in the deed is the following clause:

"Also the river for mill purposes and right of dam and backwater to the town line, and to take full control of all waters in said dam for all purposes."

A dam has been maintained ever since David Kelly came into possession, but the later deeds make no mention of the water rights.

The source of the plaintiff's title is a deed from Horatio Armstrong to Elijah P. Morse, dated October 4, 1848, and it and the deed from Daniel Jaquish to the plaintiff, dated and recorded in May, 1868, convey lands bounded northerly by the Roxbury town line, and westerly by the easterly bank of the East branch of the Delaware river.

So far as appears, Janet Montgomery had not at any time any interest in the land on the east side of the river, and her rights in the stream were limited to a commonage in the western half, although she assumed to convey the right to take full control of all waters in the dam. Plaintiff must recover, if at all, upon the strength of his own title and rights. The height of the dam and the distance to which the water was set back thereby, at the time of the execution of the deed from Armstrong to Morse in 1848, or at the time plaintiff obtained his title in 1868, is not shown.

The defendants are at least entitled to cause the water to be set back as it has been by the former dam, which the defendants claim was to or near the town line at the time plaintiff received his deed, and hence the evidence which defendants now produce tending to establish such line, and their prescriptive rights, is important. A person cannot read the record upon the trial, that upon the proceedings to punish for contempt, and the record upon this appeal, without being convinced that a considerable portion of the material evidence bearing upon the issues was not introduced upon the trial of the action. Nor does the fault seem to be chargeable to the defendants. The learned justice at Special Term, who appears to have given the application careful attention, stated in the opinion written by him granting a new trial that he was satisfied that, if the affidavits presented by the defendants were true, a great injustice had been done.

While we do not intimate an opinion as to the merits of the controversy, we are satisfied that, in view of the unsatisfactory evidence upon the trial, a different result might have been reached, had the newly dis-

covered evidence been then before the court, and that justice requires that a new trial be had, upon which the case can be disposed of upon all the evidence.

[2] The fact that the motion for a new trial is the third made by the defendants should not of itself defeat the motion, where substantial justice requires a new trial. Particularly is this so where, as in this case, the first motion was withdrawn, and the second decided without the court having before it all the material evidence now produced.

The order granting a new trial should be affirmed, with costs. All concur, except HOWARD, J., who dissents.